1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

8  NATHAN F. ELMORE, an individual, and
on behalf of others similarly situated,

9                         Plaintiff,

10     vs.

11

12

13

14  BANK OF AMERICA, N.A., a Delaware
corporation,

15                         Defendant.

16

NO. 2:14-cv-00241-JLQ

ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO
DISMISS

17     BEFORE THE COURT is Defendant Bank of America, N.A.'s ("BANA") Motion

18  to Dismiss for Failure to State a Claim pursuant to Fed.R.Civ.P. 12(b)(6) (ECF No. 20).

19  The Motion was directed to Plaintiff Nathan F. Elmore's ("Elmore") First Amended

20  Complaint (ECF No. 16). The court heard telephonic oral arguments on December 11,

21  2014. H. Lee Lewis represented Elmore and Timothy M. Lawlor spoke for BANA.

22

23                         **I. Background**

24     In 2005, Elmore purchased a single family home in Spokane, Washington with a

25  loan ultimately acquired and serviced by BANA. The deed of trust included language

26  protecting BANA interest in the property upon Elmore's breach:

27     If (a) Borrower fails to perform the covenants and agreements contained in
this Security Instrument... or (c) Borrower has abandoned the Property, then

28     Lender may do and pay for whatever is reasonable or appropriate to protect
Lender's interest in the Property and rights under this Security Instrument,

ORDER - 1

including protecting and/or assessing the value of the Property, and securing and/or protecting the Property... Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off.

In 2011 Elmore defaulted on his loan payments. On December 7, 2011, instead of foreclosing on the property, BANA approved a deed in lieu of foreclosure from Elmore which mandated that Elmore vacate the property by December 27, 2011. Along with the deed in lieu of foreclosure Elmore signed two additional agreements. The first was the "Personal Property Release" in which he relinquished all interest in personal belongings left at the property after the vacancy date. The second was the "Surrender of Possessions Agreement" which included a "hold harmless" clause:

Borrower shall hold Bank of America, N.A., its representatives, servicers, agents, successors and assigns harmless from any and all liability, loss, cost, or expense, including reasonable attorney's fees, arising out of and/or in connection with the Property.

Despite the December 27, 2011 vacancy date, Elmore did not sign these documents until January 8, 2012.

Elmore contends that at an unknown date, but before December 27, 2011, while he was in the process of moving out, BANA agents entered the property, removed at least $30,000 worth of personal belongings, changed the locks, and installed a lock box over the door knob. Upon discovering this, Elmore allegedly contacted BANA and demanded an explanation, but never heard back. BANA charged Elmore fees related to claimed property preservation measures.

Elmore claims he was denied rightful use and enjoyment of his property and that his credit score was negatively affected. Elmore does not explain why, if the alleged actions taken by BANA occurred prior to December 27, 2011, he still signed the deed in lieu of foreclosure and the accompanying documents on January 8, 2012.

## II. Legal Analysis

Elmore's First Amended Complaint raises six claims: (1) trespass; (2) intentional trespass; (3) violation of Washington's Deed of Trust Act, RCW 61.24; (4) violation of

ORDER - 2

1  Washington's Consumer Protection Act, RCW 19.86; (5) breach of contract, and (6)

2  unjust enrichment.

3      a) Standard of Review

4      A plaintiff's complaint requires only "a short and plain statement of the claim

5  showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Specific facts are not

6  necessary; the statement need only 'give the defendant fair notice of what the ... claim is

7  and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)

8  (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 55 (2007)). Discovery is the

9  appropriate phase for more specific facts to develop. See *Skaff v. Meridien North America*

10 *Beverly Hills, LLC*, 506 F.3d 832, 842 (9th Cir. 2007) ("concerns about specificity in a

11 complaint are properly addressed through discovery devices...").

12     Despite this low threshold, in answering the complaint a defendant may move for

13 dismissal by asserting that the plaintiff has "fail[ed] to state a claim upon which relief can

14 be granted." Fed.R.Civ.P. 12(b)(6). The U.S. Supreme Court has outlined what a plaintiff

15 must show to survive a motion to dismiss:

16     To survive a motion to dismiss, a complaint must contain sufficient factual
       matter, accepted as true, to "state a claim to relief that is plausible on its
17     face." A claim has facial plausibility when the plaintiff pleads factual
       content that allows the court to draw the reasonable inference that the
18     defendant is liable for the misconduct alleged. The plausibility standard is
       not akin to a "probability requirement," but it asks for more than a sheer
19     possibility that a defendant has acted unlawfully. Where a complaint pleads
       facts that are "merely consistent with" a defendant's liability, it "stops short
20     of the line between possibility and plausibility of 'entitlement to relief.'"

21     *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Twombly*, 550 U.S., at 556-57, 570

22 (2007)); see also *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

23     Plausibility rests between mere possibility and outright probability of success.

24 Plaintiffs are not required to win their case at the pleading stage, but are not allowed to

25 simply recite the elements of a chosen cause of action. This is a fine line because "a well-

26 pleaded complaint may proceed even if it appears 'that recovery is very remote and

27 unlikely.'" *Twombly*, 550 U.S., at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236

28 (1974)). Accepting Elmore's factual allegations as true, his First Amended Complaint

ORDER - 3

1  will survive the Motion to Dismiss only if he has pled facts, not legal conclusions, which
2  give rise to facially plausible claims.
3          b) Whether the "hold harmless" clause releases BANA from all legal liability
4          BANA argues that the Surrender of Possessions Agreement insulates it from any
5  legal responsibility in connection with its taking possession of the property. Elmore
6  responds that the specific words "hold harmless" rendered the clause an indemnity
7  agreement. Whether language used in a contract is sufficiently clear to release a party of
8  liability is a question of law, not fact. See *Scott v. Pac. West Mountain Resort*, 834 P.2d
9  6, 9 (Wash. 1992)("The sufficiency of the language to effect a release is generally a
10  question of law.").
11          "Exculpatory clauses are strictly construed and must be clear if the exemption from
12  liability is to be enforced." *Id.* When assessing whether a contract releases one party of
13  legal liability, "courts must look for clear, unambiguous and explicit language not to hold
14  the released party liability." *Queen Villas Homeowners Assoc. v. TCB Prop. Mgmnt.*, 149
15  Cal.App.4th 1, 5 (2007). In so doing, "[c]ourts should use common sense in interpreting
16  purported releases," and the mere fact the parties use "the words 'hold harmless' rather
17  than the word 'release' does not significantly impact the issue of whether the effect" of an
18  agreement is to relieve one party from liability. *Scott*, 834 P.2d, at 10. Therefore, whether
19  the "hold harmless" clause released BANA from liability depends on whether a common
20  sense reading of the Surrender of Possessions Agreement clearly shows that exculpation
21  was parties' intent.
22          The court finds that BANA has not made a sufficient showing that the "hold
23  harmless" clause released it from all legal liability. The operative language uses financial
24  terms, such as "loss, cost, expense," and "reasonable attorneys fees" but not words
25  indicating clear legal contemplation, such as "claim" or "negligence." The contracting
26  language is too ambiguous for the court is to discern the parties clear intent.
27          c) Whether Elmore has stated a claim under the Deed of Trust Act, RCW 61.24
28          The Deed of Trust Act ("DTA") permits "a trustee to sell a property without a

ORDER - 4

judicial process" but regulates the non-judicial foreclosure process to protect homeowners against potential abuse. *Amresco Independence Funding, Inc. v. SPS Properties, LLC*, 119 P.3d 884, 888 (Wash. App. 2005). The DTA furthers three basic objectives: "First, the nonjudicial foreclosure process should remain efficient and inexpensive. Second, the process should provide an adequate opportunity for interested parties to prevent wrongful foreclosure. Third, the process should promote the stability of land titles." *Bain v. Metropolitan Mortg. Group, Inc.*, 285 P.3d 34, 39 (Wash. 2012). The DTA explicitly authorizes "an independent cause of action for damages premised on a trustee's material DTA violations." *Frias v. Asset Foreclosure Services, Inc.*, 334 P.3d 529, 534 (Wash. 2014).

Here, there was no non-judicial foreclosure sale because title to the property was transferred from Elmore to BANA by deed in lieu of foreclosure. The general rule is that "there is no actionable, independent cause of action for monetary damages under the DTA based on DTA violations absent a complete foreclosure sale." *Id*. at 537. Permitting a claim prior to the foreclosure sale "would be inconsistent with the DTA's purpose of efficient and inexpensive foreclosures." *Id*. However, lenders may not "obtain through self-help that which [they] could not accomplish pursuant to RCW 61.24." *Thompson v. Smith*, 793 P.2d 449, 450-51 (Wash. App. 1990). In other words, a lender may not use a deed in lieu of foreclosure to engage in conduct which would violate the DTA had title transferred pursuant to a non-judicial foreclosure.

Elmore has not alleged a plausible DTA claim. He does not cite any specific statutory violation or case law to support this cause of action, but rather asserts only that BANA engaged in "self help" prohibited by the DTA. This bare allegation does not meet the Rule 8(a) pleading requirement and therefore cannot survive BANA's Motion.

> d) Whether Elmore has stated trespass, intentional trespass, or breach of contract
> claims

BANA argues that the deed of trust language explicitly authorized it to engage in property preservation measures upon breach, necessarily defeating each of Elmore's

ORDER - 5

1 common law claims. In pleadings, BANA relied on the fact that the deed of trust

2 authorized it to secure and winterize the property after Elmore's default. During oral

3 arguments, BANA focused on the language authorizing this action if Elmore abandoned

4 the property, which it argued substantively for the first time.

5       The general rule is that once a borrower breaches the deed of trust, the lender is

6 authorized to secure and winterize the property. See *Paatalo v. Morgan Chase Bank,*

7 *N.A.*, 2012 WL 2505742 at *10-11 (D. Mont. June 28, 2012); *Bennett v. Bank of*

8 *America, N.A.*, 2012 WL 1354546, at *10 (E.D. Va. Apr. 18, 2012); *McCray v.*

9 *Specialized Loan Servicing*, 2013 WL 1316341, at *4-5 (D. Md. March 28, 2013).

10 However, these cases all involve whether banks acted in conformity with deeds of trust

11 only. While this case also has a deed of trust, BANA and Elmore subsequently entered

12 into the deed in lieu of foreclosure which stated that: "the property is to be vacated on or

13 before December 27, 2011. Bank of America, N.A. must be given at least 24 hours notice

14 of the exact move out date so that we may secure the property."

15       BANA may have been authorized to take action on the property after breach of the

16 deed of trust, but that authorization did not allow it to violate the express terms of the

17 deed in lieu of foreclosure by entering the property prior to the vacancy date. The deed in

18 lieu language suggests that any action taken by BANA prior to December 27, 2011

19 without Elmore's consent may give rise to plausible breach of contract, trespass, and

20 intentional trespass claims. See *Jackass Mt. Ranch, Inc. v. South Columbia Basin Irr.*

21 *Dist.*, 305 P.3d 1108, 1122 (2013) (elements of trespass); *Grundy v. Brack Family Trust*,

22 213 P.3d 619, 624 (2009) (elements of intentional trespass); *Nw. Indep. Forest Mfrs. v.*

23 *Dep't of Labor & Indus.*, 899 P.2d 6, 9 (1995) (elements of breach of contract).

24       e) Whether Elmore has stated a claim under the Consumer Protection Act, RCW

25       19.86

26       The Consumer Protection Act ("CPA") prohibits "[u]nfair methods of competition

27 and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW

28 19.86.020. The statute authorizes a private cause of action, stating: "'[a]ny person who is

ORDER - 6

1 injured in his or her business or property' by a violation of the act may bring a civil suit

2 for injunctive relief, damages, attorneys fees and costs, and treble damages." *Panag v.*

3 *Farmers Ins. Co. of Washington*, 204 P.3d 885, 889 (Wash. 2009) (quoting RCW

4 19.86.090). "To prevail in a private CPA claim, the plaintiff must prove (1) an unfair or

5 deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public

6 interest, (4) injury to a person's business or property, and (5) causation. *Id.* (citing

7 *Hangman Ridge Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531 (Wash. 1986)).

8      BANA challenges Elmore's claim as to the first and fifth elements. Regarding the

9 first, BANA argues that Elmore has not sufficiently pled that it engaged in an unfair or

10 deceptive act or practice. This element "may be predicated upon (1) a per se violation of

11 statute, (2) an act or practice that has the capacity to deceive substantial portions of the

12 public, (3) or an unfair or deceptive act or practice not regulated by statute but in

13 violation of public interest." *Klem v. Washington Mut. Bank*, 295 P.3d 1179, 1187 (Wash.

14 2013). Notably, "[b]y broadly prohibiting 'unfair or deceptive acts or practices in the

15 conduct of any trade or commerce,' the legislature intended to provide sufficient

16 flexibility to reach unfair or deceptive conduct that inventively evades regulation."

17 *Panag*, 204 P.3d, at 895 (quoting RCW 19.86.020). Therefore, courts are statutorily

18 encouraged to refine "unfair or deceptive" as lenders and creditors find new ways to take

19 advantage of consumers.

20      BANA asserts it did nothing unfair or deceptive because it was authorized under

21 the deed of trust to engage in all of the actions Elmore claims violated the CPA.

22 However, as with the common law discussion, BANA again relies solely on the deed of

23 trust authorization without addressing the more pressing allegation that it violated the

24 deed in lieu of foreclosure by entering the property prior to the vacancy date. The court

25 finds a plausible argument exists that BANA engaged in an unfair or deceptive practice

26 by allegedly entering Elmore's property prior to the vacancy date.

27      In regards to the fifth element, BANA argues that Elmore has not sufficiently

28 alleged that it proximately caused him harm, instead claiming any injury was the result of

ORDER - 7

1  his own breach of the deed of trust. Again, the alleged proximate cause is the premature

2  entering of the property under the deed in lieu of foreclosure, not the deed of trust.

3     The court finds that Elmore has pled a viable claim under the CPA by alleging that

4  BANA violated the deed in lieu of foreclosure prior to the vacancy date. Such allegations

5  give rise to a plausible argument that BANA engaged in unfair or deceptive acts or

6  practices that proximately caused Elmore harm.

7     f) Whether Elmore has stated an unjust enrichment claim

8     In the First Amended Complaint, Elmore alleges that BANA was unjustly enriched

9  and became a tenant by sufferance by taking possession of his property prior to the

10 vacancy date. BANA claims, as before, that the deed of trust authorized its action.

11    "Three elements must be established in order to sustain a claim based on unjust

12 enrichment: a benefit conferred upon the defendant by the plaintiff; an appreciation or

13 knowledge by the defendant of the benefit; and the acceptance or retention by the

14 defendant of the benefit under such circumstances as to make it inequitable for the

15 defendant to retain the benefit without the payment of its value." *Young v. Young*, 191

16 P.3d 1258, 1262 (Wash. 2008) (quoting *Bailie Communications, Ltd. v. Trend Business*

17 *Systems, Inc.*, 810 P.2d 12, 18 (Wash. App. 1991)). Elmore claims the unjust enrichment

18 derives from BANA's being a tenant by sufferance. RCW 59.04.050 defines this tenancy:

19    Whenever any person obtains possession of premises without the consent of
20    the owner or other person having the right to give said possession, he or she
      shall be deemed a tenant by sufferance merely, and shall be liable to pay
21    reasonable rent for the actual time he or she occupied the premises, and shall
      forthwith on demand surrender his or her said possession to the owner or
22    person who had the right of possession before said entry, and all his or her
      right to possession of said premises shall terminate immediately upon said
23    demand.

24    BANA contends that the "without the consent of the owner" language renders

25 Elmore's claim meritless because the deed of trust authorized its entry into the property

26 after default. As stated, *supra,* BANA's argument is premised on the deed of trust

27 authorizing its action. However, BANA again fails to address Elmore's main argument

28 that it was the deed in lieu of foreclosure that BANA violated by taking possession of his

property prior to the vacancy date. Elmore authorized BANA to take possession of his

ORDER - 8

property after default in the deed of trust, but that consent ultimately identified December 27, 2011 as the date of transition in the deed in lieu of foreclosure. Therefore, Elmore has stated a plausible unjust enrichment claim.

### III. Conclusion

Elmore has sufficiently stated a claim for all causes of action in the First Amended Complaint except for the DTA claim. Elmore has not specified to the requisite degree what conduct BANA engaged in that violated the DTA. Furthermore, Elmore has not identified what provision of the DTA he alleges BANA violated, advancing only a general statement that it engaged in "self help" prohibited by the statute.

The "hold harmless" clause does not relieve BANA of all legal liability. To release a contracting party from liability, the contract must include unambiguous language reflecting the parties' clear intent to exculpate. A common sense reading of the Surrender of Possessions Agreement does not provide such clear language.

Elmore has sufficiently stated a claim under the CPA, alleging that the premature entry onto his property amounted to an unfair or deceptive act or practice that proximately caused him harm. BANA's argument that the deed of trust authorized its actions does not excuse an alleged breach of the deed in lieu of foreclosure by acting prior to the agreed upon vacancy date. Similarly, Elmore's common law claims: breach of contract, trespass, intentional trespass, survive based on the alleged violation of the deed in lieu of foreclosure. Lastly, Elmore has sufficiently stated an unjust enrichment claim by pleading that BANA became a tenant by sufferance by entering the property prior to the vacancy date.

**IT IS HEREBY ORDERED:** Defendant BANA's Motion to Dismiss (ECF No. 20) is **GRANTED** in part and **DENIED** in part. The Motion is Granted as to Plaintiff Elmore's Deed of Trust Act claim, which is hereby dismissed. The Motion is Denied as to the release of liability, Consumer Protection Act, trespass, intentional trespass, breach of contract, and unjust enrichment claims.

ORDER - 9

1    **IT IS SO ORDERED.** The Clerk is hereby directed to enter this Order and furnish

2  copies to counsel.

3          **DATED** this 30th day of December, 2014.

4                              s/ Justin L. Quackenbush
                        JUSTIN L. QUACKENBUSH
5                  SENIOR UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER - 10